DAVIS, APPELLANT, v. THE JOHN MOUAT LUMBER COMPANY, APPELLEE.

| 2 | 381 |
|----|-----|
| 3 | 283 |
| 2 | 381 |
| 4 | 166 |
| 4 | 346 |
| 4 | 485 |
| 4 | 512 |
| 2 | 381 |
| 7 | 96 |
| 21c | 95 |

1. MECHANICS' LIEN—PARTIES.

In an action to foreclose a lien by a material man or subcontractor, the contractor or original promisor, against whom a debt must be established as the foundation of a decree, is an indispensable party.

2. SUMMONS, PUBLICATION OF.

It is necessary that every material requirement of the statute concerning service of summons by publication be carefully and strictly pursued in order to give the court jurisdiction.

3. PERSONAL JUDGMENT—JURISDICTION.

A personal judgment in an action upon a money demand against a non-resident, on whom personal service of process within the state has not been had and who did not appear, is without validity.

4. ACTION, NATURE OF.

An action to foreclose a mechanics' lien is not, as to its principal basis, a proceeding *in rem.*

*Appeal from the District Court of Arapahoe County.*

ON the first day of June, 1890, Henry W. Davis, the owner of some property in Waddell and Machen's Subdivision, made a contract with one L. E. Forbes to build a house on his land. Beyond the general provisions relating to the details of the structure the contract provided that

Forbes should take in payment two lots at a specified valuation and subject to certain incumbrances, and that the balance of the contract price, fifteen hundred dollars ($1,500), should be paid in cash; eight hundred dollars ($800) was to be paid when the house was under roof, and the balance when the house was completed. The contractor went to work to carry out the contract, and during the progress of the work bought some materials of "The John Mouat Lumber Company," one of the parties to the suit. The contractor seems to have had considerable dealings with the lumber company, and to have bought quite a quantity of materials which he was using in the carrying out of his various undertakings. In the suit which the lumber company brought against Davis as the owner, Forbes as the contractor, and divers other persons as lienors, they claimed that Forbes had bought of them materials of the reasonable value of four hundred and eight dollars and sixty-five cents ($408.65) which went into the construction of the house. Within the time limited by the statute during which a lien might be filed by subcontractor, the company filed its claim in the proper office, and in the form necessary to the protection of their rights. The only matter of importance in dispute concerning the lienor's rights, which grows out of the facts necessary to entitle the company to file the claim, springs from the evidence offered to show that the materials went into the building. It is claimed that the company failed to prove that the materials went into the building. The delivery on the ground was not satisfactorily established, nor was it clearly shown by witnesses who had knowledge of the affair that the stuff sold went into the building.

The suit was commenced by the service of a summons on the owner and other lienors, and the plaintiff attempted to secure service on the principal contractor Forbes by a substituted service under the statute. The case seems to show that Forbes had left the country, and the Lumber Company was unable to get service on him, and in order to prosecute the suit as against him obtained an order to publish the sum-

mons.   This order was based on an affidavit made by William E. White, and substantially set forth that he was one of the attorneys for the plaintiff in the action, and that Forbes had departed from the state *sine animo revertendi*, and that his post-office address was not known to the affiant; the affidavit discloses no interest on the part of White in the suit other than that springing from his relation to it as an attorney.   The order was obtained, publication had, and on the trial personal judgment was rendered against Forbes for the sum claimed to be due.   The right to obtain the judgment on this service and the necessity of a judgment against Forbes to entitle the lienor to enforce his claim are questions abundantly saved by the record.

The statute to which the company must resort to ascertain its rights and from which must be derived the means and process of enforcement was passed in March, 1883.   It has been amended, but the only provisions to which reference will be made for the purposes of this decision are :

" Section 25.   The court may proceed to hear and determine said liens and claims, or may refer the same to a referee to ascertain and report upon said liens and claims, and the amounts justly due thereon.   Judgment shall be rendered according to the rights of the parties.   The various rights of all the lien claimants, and other parties in any such action, shall be determined and incorporated in one judgment or decree.   Each party who shall establish his claim under this act shall have a judgment against the party personally liable to him for the full amount of his claim so established, and shall have a lien established and determined in said decree upon the property to which his lien shall have attached to the extent hereinbefore stated."   This section it will be observed relates to the proceedings prior to judgment and the parties who must be before the court when the decree is rendered..

The other two sections which bear upon the questions before the court are first, section 1, as amended in the Session Laws of 1889, page 247, which is as follows :

"Section 1. Whoever shall do any work or furnish any material by contract, express or implied, with the owner of any land, his agent or trustee, for the construction, enlargement, etc., of any building upon such land," etc. The balance of the section need not be stated.

The other section as amended by the last named act is section 15 of the original statute, and 7 of the amendatory act, and is as follows: "In case such lien is claimed by a subcontractor, or assignee of a subcontractor, it shall attach and extend to the full amount due the contractor as provided by the original contract, and by any subsequent contracts relating to the same structure or improvement; and any payments made by the owner to the contractor, either before or after making such contract, or during the erection of such building or the making of such improvements, and during the time provided to subcontractors in which to file their liens, shall be at the risk of the owner; and no such payment shall be set off against the claim of any subcontractor, or assignee of a subcontractor who shall file his statement for lien and serve a copy thereof, as herein provided." The only other provision of the statute bearing upon the subject matter of this section 7 is the ensuing one which generally provides that the owner shall only be responsible to the extent of his contract price for the work.

It is substantially provided by section 4 of the amendatory act that the lien claimed be filed any time after the work is done, regardless of the limit of 60 and 40 days generally expressed in the statute as the period during which liens must be filed by the contractor or subcontractor respectively, providing the rights of purchasers and incumbrancers in good faith remain unaffected, and in the case of subcontractors, providing further that the principal contractor may not have been settled with by the owner.

The act of 1883 contained a section giving to the subcontractor the right to protect himself as to materials to be furnished or work to be done upon a contract by serving a notice of his intention which, by its terms, should substantial-

ly notify the owner of what his probable future claim might be. This provision however was swept away by the amendatory act of 1889, and there is no provision made in the statute for a notice to the owner of the making of the contract by a subcontractor, or his intention in the premises.

On this case judgment was entered against Forbes, the contractor, for the sum claimed to be due with costs, and against the owner Davis a decree was entered declaring the claim of the Lumber Company a lien upon his property, foreclosing it, and ordering the land and structure to be sold in satisfaction. By appeal the case was brought here.

Messrs. NORRIS & HOWARD, for appellant.

Mr. WILLIAM E. WHITE and Messrs. C. E. & F. HERRINGTON, for appellee.

BISSELL, J., after stating the case, delivered the opinion of the court.

Notwithstanding the fact that lien laws have long been in force in the state, and are a part of its recognized legislative policy, the present controversy raises several questions which thus far in this jurisdiction remain undetermined.

The initial question naturally presented in the order of events concerns the parties to the suit and the method by which they have been brought into court. Our statute lacks the definite direction which some enactments contain that all persons in interest, including owners, contractors and lienors, shall be made parties. But the essential character of the suit, the indebtedness upon which the right to a lien rests, and the general provision concerning the entry of judgment, as clearly as the definite direction of the other acts, require the presence of the contractor in a suit by the material man to recover for that which he has furnished. However true it may be that the principal purpose of that suit is to enforce the lien against the property and thereby recover

the debt due from the contractor, it is as equally certain that that debt is the foundation of the action, and unless it exists, and is then enforceable, the incidental right to enforce the lien cannot prevail. Many of the cases which have passed upon the question, put their decisions upon the ground that the inquiry necessarily involves the contract relations and state of accounts existing between the contractor and the one seeking to enforce the lien; that without the establishment of that debt there can be no right of recovery by the subcontractor, and his right to a lien is dependent upon the establishment of his claim or debt against the contractor. With this, say the authorities, the owner has nothing to do, and the burden of establishing that claim is put by the law upon him who brings the suit and seeks the relief. On this broad general basis, regardless of the statute, it has been often held that the contractor was an indispensable party to the action. With this view we agree, and adjudge that the contractor is not only a proper, but a necessary and indispensable. party, against whom a debt must be established as the foundation of the decree for the foreclosure of the lien. *Vreeland v. Ellsworth et al.*, 71 Ia. 347; *Kerns et al. v. Flynn*, 51 Mich. 573; *Steinkamper v. McMannus et al.*, 26 Mo. App. 51; *Sinnickson v. Lynch*, 25 N. J. L. 317.

While the statute does not directly require that the contractor shall be a party to the suit, it undoubtedly provides for a judgment in his favor against the party personally liable for the claim, to be followed by a decree in his favor against the property to the betterment of which his material has gone. It was within the evident contemplation of the legislature that the original promisor should be a party to the suit, and that a judgment against him should precede a decree against the owner, who would probably be entitled to compel the collection of the personal judgment if he could show assets belonging to the contractor before the one holding the derivative right, and proceeding *in invitum* could take his land in payment of the debt. At all events the reasons for the presence of the original debtor are so con-

clusive that in the absence of any statute it should be adjudged necessary to bring that debtor before the court prior to the entry of any decree against the owner of the land.

Since the contractor was an indispensable and necessary party, it becomes needful to ascertain whether he was in court and whether the judgment against him was properly entered. There are two fatal objections to the recovery. The first is that the order for the publication of the summons was improperly entered. No such affidavit was filed as is required by section 41 of the Code of 1887 under which the suit was commenced. The affidavit was made by an attorney in the suit, and not by the plaintiff or one of the plaintiffs, or any such representative of the corporation as is entitled under the law to act on its behalf. The necessity to strictly follow the statute in these cases has long been established, and it has been repeatedly adjudged by our supreme court that every material requirement of the statute concerning the publication of summons must be carefully and strictly pursued, in order to give the court jurisdiction: *O'Rear v. Lazarus,* 8 Colo. 608.

While perhaps not so strictly put in, *Morton v. Morton,* 16 Colo. 358, as it is in this decision, the court undoubtedly held that the attorney was without capacity to make the requisite affidavit, unless some further or other showing was made than the present record discloses. It is difficult for this court to see how, except in a very extraordinary and exceptional instance, an attorney can make himself competent, by reason of his interest, to make the requisite proof upon which the order can be based. The statute distinctly specifies that the affidavit shall be made by a party to the action, and whether, even though possessed of an interest, if not a technical party, he could still make the proof, would be a matter of very serious question.

It therefore follows that the contractor was a necessary party and that no service was made upon him. It is equally true that the preliminary judgment could not be rendered against him, since it was of the nature personal. Ever since

the very able and elaborate opinion in *Pennoyer v. Neff*, 95 U. S. 714, was rendered by the supreme court of the United States, it has been pretty universally conceded by the profession that a personal judgment rendered by a state court, in an action upon a money demand against a nonresident, on whom no personal service of process within the state was made, and who did not appear, is without any validity. Prior to this adjudication there was some diversity among the state courts on this subject, but it is doubtful if hereafter any well considered case will lay down a different doctrine. The opinion was so ably fortified by authority, and by reason, and rested upon such solid and immutable foundations, that it must be accepted as expressive of the right doctrine in these cases.    There is an exception recognized by the supreme court and provided for in our own statute, which always rests on the fact that a *res* is seized by the process of the court.    When this is true, then to the extent of the seizure, and the adjudged limit of the title of the nonresident, that thing may be subjected to any judgment which a court of competent jurisdiction sees fit to render against the nonresident.    But the exception must clearly exist, to take the case without the limit and operation of the rule, and it is plain that the only interest or right of the nonresident which can be affected by the adjudication is that which he may possess in the *res* itself.    Whether he have the absolute title, or only a contingent and derivative interest, is of little consequence, since it is only his interest in the property which is affected by the adjudication.    The present case plainly does not come within the exception.    In the first place it is not, as to the principal basis of the action, a proceeding *in rem*.    It is an action against the contractor to recover the debt due for material sold him under a contract to which the owner was not a party.    The incidental right to enforce and foreclose the lien claim against the owner in that action cannot be confounded with the principal object of the suit, which is, to recover the debt due from the contractor to the person from whom he bought his supplies ; and while under our liberal practice it is

permitted to join those parties, and to seek the enforcement of these rights concurrently in one action, it must readily be recognized as true that under the strict and more accurate procedure of the common law, the judgment against the contractor must have been entered in a suit to which the owner could not have been made a party, and that that judgment, coupled with the lien, would have furnished the substance of a bill for the foreclosure of the security. The union of the two remedies in one action must not be permitted to obscure the fact that the establishment of the debt, and its recovery, is necessarily a condition precedent to the enforcement of the other remedy, which must be held the collateral, and not the principal, object of the action. On this basis the publication could in no event be had, since the right to publish a summons in all personal actions is expressly excluded in the statute granting authority to publish summons in certain cases. It is thus evident that if the publication had been upon a sufficient and ample affidavit it would not have authorized the rendition of judgment against the contractor, and there would have been no basis for the decree foreclosing the lien.

Counsel have very elaborately argued that the sections of the statute quoted in the statement relating to payments by the owner to the contractor under his agreement with him were clearly unconstitutional, and an infraction of the rights of the citizen to deal with his property at his pleasure. It has been very ably and earnestly contended that since under the statute of Colorado the right to a lien is dependent on the existence of a contract, the subcontractor can rightfully be held to be subject to its provision, and that he can acquire no other or greater rights than flow to him therefrom, and that, regardless of the statute, it must be adjudged that his rights are to be taken as limited and controlled by the terms of the agreement between the original parties. There is great force in these suggestions. But the question is one of unusual gravity, and involves the discussion of a constitutional question over which the statute creating this court has de-

prived us of the power of final determination.    Under these circumstances, since the case may well be rested on the ground antecedently stated, we may readily be excused from discussing or determining the question.   If it were essential to the settlement or ascertainment of the rights of the parties the court would decide it, even though its judgment would be subject to a reconsideration in another tribunal. It is not essential, and it will neither be discussed nor decided.

For the reasons already assigned, and for the error which the court committed in entering judgment against the contractor, the case must be reversed and remanded.

*Reversed.*